In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00041-CV
_____

IN THE INTEREST OF K.S., J.H., K.M.S., M.S., B.C.S. AND A.S.

On Appeal from County Court at Law No. 3
Montgomery County, Texas
Trial Cause No. 19-10-14600-CV

## MEMORANDUM OPINION

Following a trial by jury, the trial court signed an order terminating Mother's and Father's parent-child relationships with *Kurt*, *James*, *Kara*, *Miles*, *Bridget*, and *Adrian*.[1] The jury found that terminating the relationships to be in the best interest of each child.

---

[1]To protect the identities of the minors, we use pseudonyms to refer to them. *See* Tex. R. App. P. 9.8(b)(2). The trial court's order reflects the jury found Mother's and Father's parental rights to their children should be terminated on various grounds, which we do not address since Mother and Father have not challenged the jury's findings on the grounds the trial court terminated them in the appeal.

1

After the trial court rendered judgment on the jury's verdict, Mother and Father filed appeals. After that, they filed separate but identical briefs. Mother and Father raise two issues in their briefs. In issue one, they argue the trial court abused its discretion when, on its own motion, it found extraordinary circumstances required the children to remain in the temporary managing conservatorship of the Department of Family and Protective Services (the Department), which allowed the trial court to avoid automatically dismissing the Department's suit under the mandatory dismissal deadline imposed by section 263.401 of the Texas Family Code.[2]

In issue two, Mother and Father complain about an order consolidating Trial Court Cause Number 21-03-03100-CV (the suit involving Adrian) into Trial Court Cause Number 19-10-14600-CV (the suit involving Kurt, James, Kara, Miles, and Bridget). Mother and Father argue the consolidation was prejudicial because it resulted in the attorneys who represented them in the trial court rendering ineffective assistance of counsel when they failed to object when the trial court

---

[2]*See* Tex. Fam. Code Ann. § 263.401.

announced it was consolidating the cases, which resulted in the case involving Adrian being tried along with the earlier filed case involving Mother's and Father's five other children in the trial that began in November 2021. We conclude Mother's and Father's arguments were either not properly preserved or that they lack merit, so we affirm.

## Background

In October 2019, the Department filed a petition asking the trial court to sign an order allowing the Department to remove Kurt, James, Kara, and Miles from their home and to name the Department as their temporary managing conservator. The next day, the trial court signed an order authorizing the Department to remove the four children named in the Department' petition from Mother's and Father's home after finding an immediate danger existed to their health. The trial court named the Department as their temporary sole managing conservator. In due course, the trial court appointed separate attorneys to represent Mother and Father in the case involving Kurt, James, Kara, and Miles.

Later that same month, Mother had a fifth child, Bridget. Shortly after that, the Department amended its petition and asked the trial court to terminate Mother's and Father's rights to Bridget too. In a

supplemental order, the trial court named the Department as Bridget's temporary sole managing conservator.

Eight months later, Mother and Father demanded a trial by jury. In July 2020, the judge of the 418th District Court transferred the case "out of the 418th District Court and into County Court at Law Number 3 (Transferee Court) for purposes of docket equalization."

On October 30, 2020, the judge of the County Court at Law Number 3 conducted a permanency hearing. During the hearing, the trial court advised the attorneys that the court, "on my own motion," was "going to grant a general extension" and "finding extraordinary circumstances" based on "a combination . . . but not limited to the follow[ing]:"

1. "the case was transferred to this court from the original court very late in the case, almost eight - - well, actually almost ten months into it."

2. "We also have a jury demand that requires special consideration during this COVID period. . . I already have two or three juries that have to be scheduled before the end of the year. So I would not logistically be able to do that."

3. "[W]e have multiple potential caregivers for these children. We have a pending ICPC home study out of the state of New Hampshire, and I think that the parties have not had an opportunity to fully mediate this case and address all possible outcomes."

4

During the same hearing—which we note the court conducted one year and two days after the trial court appointed the Department as temporary sole managing conservator of Mother's and Father's children—the judge found "extraordinary circumstances" required the children to remain "in the temporary managing conservatorship of the [Department] and that continuing the appointment of the Department as temporary managing conservator is in the best interest of the children." In the same order, the trial court set the trial for April 2021. The trial court also established a new date on which the case would be dismissed by operation of law if it was not tried.

In March 2021, Mother gave birth to her sixth child, Adrian. Shortly after Mother had that child, the Department filed a petition in the County Court at Law Number 3 seeking to terminate Mother's and Father's parent-child relationship with Adrian. That same day, the trial court, by emergency order, named the Department as Adrian's temporary sole managing conservator.

Between March and September 2021, the trial court conducted additional permanency hearings. In these hearings, the trial court signed orders continuing the Department's appointment as the temporary

managing conservator of the children, set a new trial date for November 15, 2021, and established a December 1, 2021, as the new date on which the case would be automatically dismissed by operation of law if not tried.

The parties tried the case to a jury beginning in November 2021. When the trial ended, the jury answered several issues in favor of the Department's allegations claiming there were grounds that justified terminating Mother's and Father's parent-child relationship with each child subject to the consolidated suit. Following the trial, the trial court signed an order terminating Mother's and Father's parental rights to their children, Kurt, James, Kara, Miles, Bridget, and Adrian.

## Analysis

### *Did the trial court abuse its discretion by extending the dismissal deadline?*

Section 263.401 of the Texas Family Code creates an automatic dismissal deadline that generally requires trial courts to dismiss parental rights termination cases within a year (more or less) of the date the trial court authorized the Department to remove from a child from a parent's home.[3] The reason we refer to the period as a year (more or less)

---

[3] *Id*. § 263.401.

is that the automatic dismissal date allows the trial court to retain the suit on its docket until a defined statutory deadline that ends on the first Monday after the first anniversary of the date the trial court rendered the temporary order appointing the Department as child's temporary managing conservator.[4] Then, subsection (b) of the automatic dismissal statute provides that unless the trial has started by the statutory deadline, the trial court

> may not retain the suit on the court's docket after the [date the trial was scheduled to have commenced] unless the court finds that *extraordinary circumstances* necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. (emphasis added).[5]

In this case, the trial court conducted a permanency hearing in the consolidated case involving Mother's and Father's six children on October 22, 2020. During the hearing, the trial court found that *extraordinary circumstances* existed to retain Trial Court Cause Number 19-10-14600-CV on the court's docket. The court ordered the Department to remain as the temporary managing conservator of Mother's and Father's children,

---

[4]*Id.* § 263.401(a).
[5]*Id.* § 263.401(b).

and it found that leaving the Department as their temporary managing conservator to be in the children's best interest.

Turning to our analysis of Mother's and Father's arguments, we note the automatic dismissal statute, section 263.401, provides courts and parties with little to no guidance about what procedures parties are to follow when they need extensions that result from circumstances that may arise over the life of a case.[6] For example, no definition exists in section 263.401 for the term *extraordinary circumstances*.[7] Yet since the extensions mentioned in section 263.401 are much like continuances, we will apply an abuse of discretion standard to the ruling that Mother and Father challenge in their appeal to the extension the trial court granted here.[8]

"The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without

---

[6]*Id.* § 263.401.

[7]As commonly understood, the term means "more than ordinary : not of the ordinary order or pattern or norm." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 807 (2002).

[8]*In re D.W.*, 249 S.W.3d 625, 647 (Tex. App.—Fort Worth 2008, pet. denied).

reference to any guiding rules and principles."[9] "The mere fact that a trial judge may decide a matter within [their] discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred."[10]

In our opinion, the circumstances the led the trial court to grant the extension fall within the ordinary meaning of the word *extraordinary* since the circumstances shown in the record were certainly not within the ordinary order, pattern, or norm. During the hearing, the trial court articulated problems it was having obtaining juries because of the Covid-19 pandemic complicated further by the fact that other juries were already scheduled ahead of the Mother's and Father's case that were on the court's docket. The problems in scheduling jury trials during the Covid-19 pandemic were complicated by the fact that two of the children involved in the case were involved in home studies being conducted in another state, studies that had reportedly resulted in their own delays.

---

[9]*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

[10]*Id*. at 242.

Mother and Father suggest the trial court abused its discretion in failing to focus on the needs of their children during the permanency hearing when it decided to grant the extension and focused instead on the needs of the court. Certainly, the discussion that occurred in the hearing reflect the trial court was concerned about when it could schedule the case for trial given the problems associated with getting jurors during a pandemic, but the scheduling problems associated with the need for jurors is a problem linked to Mother's and Father's demand to have a jury resolve the dispute, not a demand made by the court. And while the trial court never specifically discussed its thoughts about the children's needs, there is testimony the trial court heard during the hearing about the children's needs and their progress while the children were in the Department's care.[11] Mother and Father also never asked the trial court

---

[11]During the hearing, the Department's attorney told the court that the Department was awaiting paperwork from studies of homes involving relatives of the children, some of whom were in other states. According to the Department's caseworker, who was present during the hearing, the Department was waiting on "everything to come back from [another] state." She also described the Department's current goals and alternative goals for the children, explaining that three of the four children have special needs, needs the caseworker described. The caseworker testified that in her opinion, it was in the best interest of the children for the court

to make specific findings beyond those the trial court orally stated in the hearing to explain why it was finding *extraordinary circumstances* existed to justify retaining the case on its docket beyond the statutory deadline.[12]

Mother's and Father's attorneys cross-examined the caseworker in the hearing, but they called no witnesses of their own. In their briefs, the appellants point to no testimony in the record to support any claim that the trial court ignored any of the testimony before it in the hearing (or in any of the proceedings before the hearing occurred) that addressed the children's needs.

In addition to criticizing the trial court for not focusing on the children's needs, Mother and Father argue the trial court abused its discretion by failing to make the specific findings required by section 263.401(b) to support its extraordinary circumstances finding. While we disagree the trial court did not make the findings that are required by

---

to continue the Department's appointment as the children's temporary managing conservator.

[12]*See* Tex. R. Civ. P. 299 (Omitted Findings). Mother and Father filed the suit to terminate Kurt, James, Kara, and Miles on October 28, 2019.

263.401(b), the omitted findings Mother and Father argue the trial court should have made—a finding focusing on the needs of the children rather than the needs of the court—concern complaints raised for the first time on appeal that Mother and Father failed to properly preserve for our review.[13] As to Mother's and Father's argument that the trial court omitted necessary findings in its order, the Texas Supreme Court has explained: "[C]omplaints regarding the trial court's compliance with the requirements in subsection (b) must be preserved for appellate review."[14] We conclude Mother and Father failed to preserve any complaint that the trial court failed to provide them with specific findings addressing the children's needs as related to why extraordinary circumstances justified an extension of the dismissal deadline assuming without deciding that such findings, if specifically requested, are required.

Even were we to liberally construe Mother's and Father's complaints as an argument that the evidence is insufficient to support a finding of extraordinary circumstances or a finding that it was in the children's best interest to continue the Department's appointment as the

---

[13]Tex. R. App. P. 33.1.
[14]*Interest of G.X.H.*, 627 S.W.3d 288, 301 (Tex. 2021).

children's temporary managing conservator, those arguments would also fail. The caseworker's testimony supports the trial court's best-interest finding about continuing the Department's appointment as the children's temporary managing conservator pending the trial. And we have already explained why we agree with the trial court that this case does not fit the ordinary pattern or norm. Because Mother's and Father's arguments were either not properly preserved or if they were they lack merit, the issue is overruled.

*Did the appellants preserve their complaint about the ruling consolidating Trial Court Cause Number 21-03-03100-CV with Cause Number 19-10-14600-CV?*

In issue two, Mother and Father raise two separate arguments. First, they complain the trial court erred by ordering the case involving Adrian, a case the Department filed in March 2021, consolidated into the case the Department filed earlier to terminate their rights to Kurt, James, Kara, Miles, and Bridget. Around five months before the trial occurred in November 2021, the trial court signed the order consolidating the two causes, which then allowed the cases to be tried before the same jury.

13

Here, the appellants suggest they suffered prejudice when the trial court consolidated the suit the Department filed that involved five of their children with the suit the Department filed to address the rights to Adrian because in Adrian's case they did not have "the full opportunity to fulfill the requirement[s]" of their service plans. Specifically, they complain that had the cases not been consolidated, they would have benefitted by having been able to participate in additional therapy sessions given the testimony of their therapist that additional therapy might have been beneficial in resolving anger issues their therapist noticed that Mother and Father experienced during the therapy sessions conducted over the four-to-five-month period in which they were in therapy before the trial.[15] Even so, Mother and Father concede on appeal that the attorneys who represented them in the trial court "failed to

---

[15]The psychotherapist who treated Mother and Father for a four-to-five-month period before the trial expressed there was anger and signs of domestic violence present in the home, although Mother and Father denied that Father hit Mother even though the therapist noted Mother had bruises near her elbow. Father admitted he had problems drinking in the past but denied having problems currently or during the time he was meeting with the therapist. As to recommendations for additional therapy for their anger issues, the psychotherapist testified that he thought additional therapy would be beneficial if Mother and Father "were willing to address it."

14

object" when the trial court ordered Trial Court Cause Number 21-03-03100-CV consolidated into Trial Court Cause Number 19-10-14600-CV.[16]

The general rule of error preservation requires parties to preserve error through a timely request, objection, or motion in the trial court to give the trial court a fair opportunity to rule on the party's complaint.[17] Here, Mother and Father acknowledge the trial court never ruled on any objection and the attorneys who represented them in the trial court lodged no objections to the Department's motion or to the trial court's order consolidating the cases for trial. By failing to object, Mother and Father failed to preserve their complaint about the trial court's ruling consolidating the cases for trial.[18]

Alternatively, Mother and Father argue they received ineffective assistance of counsel because their attorneys failed to object to the trial court's order consolidating the two causes for trial. According to the appellants, they were prejudiced by their respective attorney's failure to

---

[16]The attorneys who filed Mother's and Father's briefs are not the attorneys who represented them in the trial.

[17]*See* Tex. R. App. P. 33.1(a).

[18]*Id.*

object because the consolidation of the two cases interfered with Mother's and Father's ability to complete the tasks in their family service plans.

In parental-rights termination cases, Texas courts follow the test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) to measure a parent's allegation that the parent received constitutionally ineffective assistance of counsel.[19] To prove an ineffective assistance claim, the party asserting the claim must establish that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.[20] Under *Strickland*, the parent must "successfully show both prongs of the inquiry."[21] The parent who is claiming ineffective assistance has the burden of proof on the claim.[22]

In considering claims alleging ineffective assistance, we "take into account all of the circumstances surrounding the case, focusing on whether counsel performed in a 'reasonably effective' manner."[23] Our review of the record is deferential, and we presume counsel's conduct fell

---

[19]*In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003).

[20]*See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *In re J.P.B.*, 180 S.W.3d 570, 574 (Tex. 2005).

[21]S*ee Strickland*, 466 U.S. at 688, 694; *M.S.*, 115 S.W.3d at 545.

[22]*M.S.*, 115 S.W.3d at 545.

[23]*Id*. (citing *Strickland*, 466 U.S. at 687).

within the range of reasonable professional assistance since we must consider "the possibility that counsel's actions [were] strategic."[24] Importantly, allegations "of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."[25] So when the decision criticized in the appeal concerns matters of trial strategy, complaints alleging ineffective assistance are not generally firmly founded on the record unless the strategy that counsel followed in conducting the trial was one that was so outrageous "no competent attorney would have engaged in it[.]"[26]

We cannot say no competent attorney would have allowed the cases to be consolidated under the circumstances that exist under the record that is before us here. Perhaps Mother's and Father's attorneys considered it to the parents' advantage to allow Adrian's case, Trial Court Cause Number 21-03-03100-CV, to be consolidated into the earlier cause on the theory that the Department had less proof in Adrian's case than in the others, believing that the weakness of the Department's case in

---

[24]*Id.*

[25]*Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 622-23 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (cleaned up).

[26]*M.S.*, 115 S.W.3d at 545 (cleaned up).

17

the more recently filed case weakened the Department's case overall. Simply put, without a record explaining the trial counsel's strategy, we cannot know that no competent attorney would not have objected to consolidating the two causes, which is what occurred here on a record that is silent about the reasons for trial counsels' strategy.

Mother and Father suggest that had they had more time with their therapist, their anger issues might have improved and their chances at avoiding having their relationship with Adrian terminated would have likewise improved. But the psychotherapist who testified never said he thought Mother's and Father's anger issues would resolve or improve by March 2022, the one-year anniversary of the date the Department filed the petition to terminate the parent-child relationship between Mother, Father, and their child Adrian. He also never said their anger issues were likely to improve, only that with more therapy and if Mother and Father were willing to address the problems, the problems possibly could improve.

After reviewing the record, we find Mother's and Father's claims of ineffectiveness of counsel are not firmly founded or supported by the

18

record. We overrule their ineffective assistance of counsel argument because the arguments they rely on to support it lack merit.[27]

Conclusion

For the reasons explained above, the trial court's judgment is AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on June 6, 2022
Opinion Delivered July 14, 2022

Before Kreger, Horton and Johnson, JJ.

---

[27]*See In re A.S.*, No. 09-21-00142-CV, 2021 Tex. App. LEXIS 8988, at *34 (Tex. App.—Beaumont Nov. 4, 2021, pet. denied) (mem. op.) (*"An allegation of ineffective assistance of counsel in a termination proceeding must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness and the resulting harm."); *In re S.M.T.*, 241 S.W.3d 650, 653 (Tex. App.—Beaumont 2007, no pet.) ("Any claim of ineffective assistance must be firmly founded in the record and the record must affirmatively demonstrate the ineffectiveness.").